McFADDEN, Presiding Judge,
concurring in part and dissenting in part.
Because the trial court excluded evidence relevant to a plausible defense that was not evidence of the victim’s past sexual behavior and therefore not within the scope of the Rape Shield Statute, I respectfully dissent from Division 2. I concur fully in Division 1.
After initially accusing, by name, a boy who lived in her neighborhood of impregnating her, A. O. leveled the same charge against Atkins. Notwithstanding DNA evidence that belied that charge, prosecution of Atkins continued on the theory that Atkins raped and molested her on other occasions.
*429 Atkins filed a motion in limine, arguing that he “should have been allowed to cross-examine [A. O.] regarding her motive to make up a false story that he was the father of the child.” Such evidence, he argued, would “go to her motive . . . [f]or making up this story . . . [if] she’s trying to protect her boyfriend or someone along that nature.” The trial court denied the motion, ruling:
The pertinent evidence that will come out before the jury is that your client was alleged to be the father by the alleged victim; and DNA, the science, showed that he was not. That evidence will be placed before the jury The jury can then conclude — she didn’t impregnate herself. So the jury can then conclude, without knowing who it was or how it happened, that she had sex with somebody else. So the Court doesn’t believe that any specific inquiry of the alleged victim about who, when, where and why is appropriate; and I do believe that it would violate rape shield.
(Punctuation omitted.) So Atkins did not address A. O.’s motive to lie in his closing argument. As Atkins argues on appeal, “In the absence of cross-examination, a closing argument about who the father could have been was inherently speculative and unpersuasive.” (Emphasis in original).
The state, however, did address motive in its closing. The state acknowledged that A. O. had “said [Atkins] raped me and I got pregnant. Not possible — no possibility that it couldbe anyone else’s.” But, the state argued, this falsehood should be attributed to A. O.’s “13-year-old mind” and to “the process of disclosure.” A. O., the state assured the jury, “had no motive to lie.”
The issue before us is whether, under the facts of this case, the identity of the person who impregnated A. O. and his relationship with her falls within the scope of the Rape Shield Statute. It does not.
The fact that A. O. was impregnated was in evidence. Only the identity of the person who impregnated her and the nature of his relationship with her was excluded. In other words, the sexual aspect of the intercourse between A. O and that person was in evidence; the non-sexual aspect was not. See Richardson v. State, 276 Ga. 639, 641 (1) (581 SE2d 528) (2003).
Our Supreme Court addressed the scope of the Rape Shield Statute when it upheld its constitutionality: “a strong legislative attempt to protect the victim-prosecutrix in rape cases by the exclusion of evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence *430 of the accused.” Harris v. State, 257 Ga. 666, 667 (1) (a) (362 SE2d 211) (1987) (citation and punctuation omitted).
The majority misperceives that scope. The Rape Shield Statute, the majority notes with some dismay, “is so broad as to exclude all evidence ‘relating to’ a victim’s past sexual behavior with the sole exception being evidence related to activity which included the defendant.” Maj. Op. at 428. The majority’s dismay would be warranted if its reading of the statute were correct. But it is not correct. The majority’s reading of the statute is contrary to Harris, supra. And it is contrary to the language of the statute itself — particularly language omitted from its truncated recitation of subsection (a). That omitted language is emphasized here:
(a) In any prosecution for [sexual offenses including those at issue], evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses, except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness’s marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.
OCGA § 24-4-412 (a) (emphasis supplied). The list set out in that language has a purpose. Statutes are to be read so as to avoid a “construction that will render some of the statutory language mere surplusage[.]” Kennedy v. Carlton, 294 Ga. 576, 578 (2) (757 SE2d 46) (2014). It is not, of course, an exclusive list. Its purpose is to illustrate the scope of the Rape Shield Statute. The list, and the term of enlargement with which it begins, must be read in light of the statutory canon of construction, ejusdem generis. Under this principle,
when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis [i.e., of the same kind or class] with the things specifically named, unless, of course, there is something to show that a wider sense was intended. [Cits.]
Center for a Sustainable Coast v. Coastal Marshlands Protection Committee, 284 Ga. 736, 737-738 (1) (670 SE2d 429) (2008), citing Dept. of Transp. v. Montgomery Tank Lines, 276 Ga. 105, 106 (1) n. 5 *431 (575 SE2d 487) (2003) (punctuation omitted). See also Wilson v. Clark Atlanta Univ., 339 Ga. App. 814, 834 (2) (c) (794 SE2d 422) (2016) (“Under the rule of ejusdem generis, the words ‘including but not limited to’ ordinarily should be construed as referring to [things] of the same kind as those specially named.”) (citations and punctuation omitted). So the evidence excluded by the Rape Shield Statute is evidence of the same kind or class as “evidence of the complaining witness’s marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.” OCGA § 24-4-412 (a). The evidence excluded here is not of that kind or class.
Evidence of the identity of the person who impregnated A. O., of his relationship to her, and of her possible motive to lie to protect him is not “evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused.” Harris, supra, 257 Ga. at 667 (1) (a) (citations and punctuation omitted). It is not evidence of A. O.’s “past sexual behavior.” OCGA § 24-4-412 (a). It is not evidence of the same kind or class as the list of examples in the final sentence of OCGA § 24-4-412 (a). It is tangential to evidence of sexual encounters — which the state had introduced into evidence and which was central to its case.
So the issue before us is controlled by Richardson, 276 Ga. at 639. As here, the trial court in Richardson excluded “non-sexual questioning of the victim about her previous relationship” through which Richardson sought to show a motive to lie, id. at 641 (1), and the Supreme Court reversed. It was undisputed that the defendant and victim had had a sexual encounter. Consent was the issue. The defendant had sought to establish that the victim’s hope to rekindle a relationship with another man, and her consequent wish to explain the physical evidence of her encounter with the defendant, motivated her to lie. Here, as in Richardson, the excluded evidence touched on a sexual encounter central to the case; but “[t]he proposed inquiry was confined to the existence of a relationship . . . and whether [a] desire [related to] that relationship was a motive to make a false claim of rape.” Id.
Because the issue before us is the scope of the statute, it is irrelevant that the Rape Shield Statute “supersedes all evidentiary exceptions[.]” Logan v. State, 212 Ga. App. 734, 735 (1) (a) (442 SE2d 883) (1994). And I agree with the majority that the statutory exception for past acts involving the defendant, OCGA § 24-4-412 (b), is also irrelevant.
Application of the Rape Shield Statute is fact intensive. For example, the majority cites Cox v. State, 241 Ga. App. 388 (526 SE2d *432 887) (1999). We held in that case, “Cox’s stepdaughter told her physician that she was sexually active with her boyfriend. This evidence regarding the identity of her sexual partner goes directly to the stepdaughter’s past sexual behavior and, under the facts of this case, is inadmissible under the Rape Shield Law[.]” Id. at 390 (2). And the trial court in Cox did admit the fact that the victim had been sexually active and excluded only the identity of her boyfriend. So Cox does appear, at first glance, to be on all fours with this case. But when we upheld the trial court’s ruling we emphasized — twice — that we were doing so “under the facts of this case.” Id. at 390, 391 (2). The facts of Cox were that, while the fact that the victim had been sexually active was admitted, apparently as relevant to the defense that the victim’s boyfriend rather than the defendant was the cause of certain physical evidence, the properly-excluded evidence of the identity of her boyfriend would have supported only a rather dubious prior-inconsistent-statement argument. Id. at 390 (2).
So in Cox, evidence of the victim’s boyfriend’s identity was a substantially gratuitous intrusion. It was “evidence which might reflect on the character of the witness without contributing materially to the issue of the guilt or innocence of the accused.” Harris, 257 Ga. at 667 (1) (a) (citation and punctuation omitted). It was not evidence of the kind or class barred by the Rape Shield Statute, OCGA § 24-4-412 (a). In this case, however, evidence of the identity of the person who impregnated A. O. would not materially add to sexual evidence admitted by the state and was essential to Atkins’s defense.
On Motion for Reconsideration.
McFadden, Presiding Judge.
I amend my earlier dissent in light of Atkins’s motion for reconsideration. He makes a sound and responsive argument. In upholding the trial court’s oral ruling, the majority has adopted a construction of the Rape Shield Statute that renders it so broad as to be constitutionally suspect. That construction should be rejected under the canon of constitutional avoidance. See Castillo-Solis v. State, 292 Ga. 755, 760 (2) (740 SE2d 583) (2013); Haley v. State, 289 Ga. 515, 521-522 (2) (712 SE2d 838) (2011); see also Antonin Scalia & BryanA. Garner, Reading Law: The Interpretation of Legal Texts 247-251 (1st ed. 2012). I write again to adopt that argument.
The author of the majority opinion, writing for himself alone, acknowledges in Division 2 (b) that “myriad questions related to the Confrontation Clause and Due Process protections of our constitutions” are raised by “the notion that the act is so broad as to exclude *433 all evidence ‘relating to’ a victim’s past sexual behavior with the sole exception being evidence related to activity which included the defendant.” Maj. Op. at 428. I agree.
Moreover, it’s not a “notion.” It’s a holding. There is no daylight between the so-called notion from which the majority author attempts to distance himself in Division 2 (b) and the authoritative construction of the Rape Shield Statute in Division 2 (a).
The majority author dismisses those constitutional concerns on the basis that “the evidence sought in this case falls behind the wall erected by the Rape Shield Statute.” Maj. Op. at 428. That is a non sequitur. Constitutions trump statutes; statutes don’t trump constitutions.
I also disagree with the majority author’s suggestion that those constitutional concerns may be dismissed by distinguishing this case from one where the evidence is “highly probative of innocence [and] directly related to the honesty of a witness.” Maj. Op. at 428. The rights afforded by the Confrontation and Due Process Clauses are not limited to evidence an appellate court deems particularly persuasive.
And in fact, the evidence at issue here is highly probative of innocence and directly related to the honesty of a witness. It may be that A. O.’s testimony was wholly true. But she’s told three different, stories. It is at least plausible that she falsely accused Atkins in order to protect the person who impregnated her and to dissuade Leon Surles from punishing her and that, when that accusation was belied by DNA evidence, she changed her story again to avoid punishment for lying. The ruling before us hobbled Atkins’s inquiry into that possibility. So the majority’s overbroad reading of the Rape Shield Statute is not merely erroneous and constitutionally suspect. It may well have perpetuated a terrible injustice.
We should be mindful of an observation by then-Justice, later Chief Justice, Weltner. He was addressing the writ of habeas corpus, but his words have broader application.
Too much of our limited judicial resources are consumed in looking for real or imagined errors in the convictions of people who are plainly guilty.... But we must not become so engrossed in the searching out of procedural faults which sometimes intrude in convicting the guilty that we forget the core purpose of the writ — which is to free the innocent wrongfully deprived of their liberty.
Valenzuela v. Newsome, 253 Ga. 793, 796 (4) (325 SE2d 370) (1985).
*434 Decided June 30, 2017
Reconsideration denied July 17, 2017
Christina Cribbs, Bentley C. Adams, for appellant.
Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Arthur C. Walton, Assistant District Attorneys, for appellee.